UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAMUEL D. MANNING,

                Plaintiff,

     v.

KING COUNTY,

                Defendant.

Case No. C19-372-RSL-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff, who is currently in the custody of the Washington Department of Corrections, filed this action while confined at the King County Jail ("the Jail") in Seattle, Washington. Plaintiff alleges in his amended complaint that the medical staff at the Jail failed to provide proper treatment for his injured elbow. (Dkt. # 7 ("Am. Compl.") at 3.) Plaintiff identifies King County as the sole Defendant in this action. Plaintiff requests injunctive relief and damages. (*Id*. at 4.)

Defendant now moves for summary judgment. (Dkt. # 15 ("Mot. Summ. J.").) Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed no response to Defendant's motion. The Court, having reviewed Plaintiff's amended complaint, Defendant's motion for summary judgment, and the

REPORT AND RECOMMENDATION - 1

1 balance of the record, concludes that Defendant's motion should be granted, and that Plaintiff's
2 amended complaint and this action should be dismissed with prejudice.

3                 **II.      BACKGROUND**

4        Plaintiff asserts in his amended complaint that in November 2018, during an altercation at
5 the Jail, he reinjured his previously injured left elbow causing it to become swollen and painful.[1]
6 (Am. Compl. at 3.) He further asserts that in 2019, he wrote to the medical staff about his injury
7 and he was evaluated. (*Id.*) According to Plaintiff, the medical staff observed some swelling and
8 agreed to x-ray the area, and the x-rays revealed bone fragments which were likely causing the
9 swelling. (*Id.*) Plaintiff claims that despite the pain and limitations in his range of motion caused
10 by the bone fragments, he was advised that this was not enough to warrant surgical intervention
11 and he needed to pursue care once he was out of custody. (*Id.*) Plaintiff contends that the Jail's
12 "custom" is to ignore old injuries unless they are dire, and he maintains that his injury is not, in
13 fact, an old injury but is instead a "newly aggravated injury" which has worsened. (*Id.*) Plaintiff
14 asserts that he is now barely able to use his left arm as a result of the injury. (*Id.*)

15        Defendant submitted in support of its motion for summary judgment the declaration of
16 Dr. Benjamin Sanders, Medical Director of King County Jail Health Services ("JHS"), which
17 details Plaintiff's interactions with JHS staff between November 2018, when Plaintiff claims he
18 was reinjured, and March 2019, when Plaintiff filed this action, and includes as exhibits copies
19 of Plaintiff's medical records. (*See* Dkt. # 16 ("Sanders Decl.").) Defendant's evidence shows
20 that Plaintiff first complained about elbow pain in a medical kite submitted on January 7, 2019.
21 (*Id.*, Ex. G.) In that kite, Plaintiff stated that he had a bone fragment in his elbow as a result of a

---

22 [1] Plaintiff indicates that his left elbow was broken in 2013, and that while confined in the Jail in 2014 a CAT scan was done which revealed bone fragments in the elbow. (Am. Compl. at 3.) According to Plaintiff, nothing was done
23 at that time to treat the issue because the bone fragments were not immobilizing him. (*Id.*)

REPORT AND RECOMMENDATION - 2

past injury and that it would get lodged in the joint causing pain and making it impossible for him to straighten or bend his arm beyond a small amount. (*Id.*)

Plaintiff was seen by a nurse the following day. (*Id.*, Ex. H.) Plaintiff reported to the nurse that his symptoms would "come[] and go[]" since the initial injury which occurred when he was younger. (*Id.*) He also reported that he was supposed to get surgery "but never followed up." (*Id.*) The nurse noted that there was no history of an elbow injury on Plaintiff's "problem list," there were no deformities in either of Plaintiff's elbows, and Plaintiff was able to extend and flex both of his arms. (*Id.*) The nurse scheduled an appointment for Plaintiff to be seen in the clinic. (*Id.*)

On January 13, 2019, Plaintiff submitted a second medical kite regarding his elbow in which he requested that his clinic appointment be assigned a higher priority level because he believed his condition was worsening and he wanted to be seen more quickly. (*See id.*, Ex. I.) On January 15, 2019, Plaintiff was seen by a nurse in response to his request for a medical appointment. (*Id.*, Ex. J.) Plaintiff reported to the nurse that he had fractured his elbow a few years prior and that he had bone fragments in the elbow which restricted his movement and caused some swelling. (*Id.*) The nurse noted that Plaintiff was "able to do ROM [range of motion] with no restrictions" and had some light swelling in his left elbow. (*Id.*) She also noted that Plaintiff already had a clinic appointment scheduled. (*Id.*)

Plaintiff was seen in the clinic by a doctor on January 24, 2019. (*Id.*, Ex. K.) Plaintiff advised the doctor that he had been diagnosed with a bone fragment in his elbow years prior but had never followed up because of insurance issues. (*Id.*) He reported that he was being bothered by mild pain and limitation in his range of motion. (*Id.*) Upon examination, the doctor noted no obvious deformity or swelling in the elbow and no significant functional limitation. (*Id.*) The

REPORT AND RECOMMENDATION - 3

doctor advised Plaintiff that they may not be able to fix the injury for him during his incarceration because it would likely require follow-up with orthopedics which would be challenging to arrange for a non-urgent matter. (*Id.*) The doctor did, however, order an x-ray and a follow-up clinic visit so that the injury could be further evaluated. (*Id.*)

The x-rays were completed on February 19, 2019 and, on February 23, 2019, Plaintiff was again seen in the clinic for complaints of discomfort in his elbow. (*Id.*, Exs. L, M.) The doctor who evaluated Plaintiff noted that the x-rays showed some bone fragments, likely from a prior trauma in that area. (*Id.*, Ex. M.) The doctor further noted that Plaintiff's elbow had no visible deformities and was non-tender, and that his extension and flexion were both about 90 percent. (*Id.*) Finally, the doctor noted that the injury was "undoubtedly years old" and that Plaintiff would be advised to pursue treatment when he was out of custody because "I do not see that it would be significantly impacting his ability to function." (*Id.*)

Plaintiff filed his original complaint in this action on March 12, 2019. (*See* Dkt. # 1-1.) Plaintiff named Seattle and King County Public Health as the only Defendant in that pleading. (*Id.*) The Court declined to serve Plaintiff's original complaint because he failed to name a proper Defendant. (Dkt. # 6.) Plaintiff filed his amended complaint on April 4, 2019. (Dkt. # 7.)

### III.    DISCUSSION

**A.    Applicable Standards**

*1.    Summary Judgment Standard*

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he

REPORT AND RECOMMENDATION - 4

has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is

REPORT AND RECOMMENDATION - 5

not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

        2.     *Section 1983 Standard*

Plaintiff filed his complaint under 42 U.S.C. § 1983. In order to sustain a cause of action under § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff does not specifically allege in his amended complaint any violation of a federal constitutional right, but the facts alleged therein implicate Plaintiff's constitutional right to receive adequate medical care while confined.

**B.     Analysis**

Defendant argues in its motion for summary judgment that Plaintiff's claims must be dismissed because there is no custom or policy that caused a violation of Plaintiff's constitutional rights, and because there is no evidence that King County was deliberately indifferent to Plaintiff's serious medical needs. (Mot. Summ. J. at 5-6.)

A municipality or local government unit, such as King County, can be sued as a "person" under § 1983. *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose municipal liability must identify a municipal "policy" or "custom" that caused his or her injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). *See also City of Canton v.*

REPORT AND RECOMMENDATION - 6

*Harris*, 489 U.S. 378, 385 (1989) (plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). Liability may also exist where there is a "policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) (citing *City of Canton*, 489 U.S. at 388).

Plaintiff alleges in this case that "the jails [sic] 'custom' is that old injuries, unless dire, are ignored." Plaintiff fails, however, to present any evidence demonstrating that such a policy exists. Moreover, the facts set forth in Plaintiff's amended complaint pertain only to King County's alleged refusal to treat Plaintiff's prior injury and do not imply a general pattern of such conduct. The Ninth Circuit has made clear that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff's contention that a custom existed which resulted in the violation of his constitutional rights is conclusory and insufficient to state a claim against King County.

There is also an absence of evidence in the record demonstrating that King County, or any of its employees, violated Plaintiff's federal constitutional rights. Because the conduct complained of occurred during Plaintiff's confinement as a pretrial detainee, his rights derive from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Court applies a deliberate indifference standard in considering claims relating to medical care. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010), *overruled in part on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016). A prisoner or pretrial detainee must allege "acts or

REPORT AND RECOMMENDATION - 7

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. A serious medical need exists if the failure to treat an inmate's condition "could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

Pursuant to recent Ninth Circuit law, the Court evaluates a pretrial detainee's Fourteenth Amendment claim alleging a violation of the right to adequate medical care under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro*, 833 F.3d at 1070).[2] A plaintiff must demonstrate that: (1) the defendant made an intentional decision with respect to conditions under which the plaintiff was confined; (2) the conditions put plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate the risk, "even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious;" and (4) by not taking such measures, the defendant caused plaintiff injury. *Id*. at 1125.

A "mere lack of due care" does not suffice to establish a constitutional violation. *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A pretrial detainee "must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Id*. (quoting *Castro*, 833 F.3d at 1071). *See also Estelle*, 529 U.S. at 106 ("Medical malpractice does

---

[2] Previously, "all conditions of confinement claims, including claims for inadequate medical care, were analyzed under a subjective deliberate indifference standard whether brought by a convicted prisoner under the Eighth Amendment or pretrial detainee under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1122-23 (citing *Clouthier*, 591 F.3d at 1242-43).

REPORT AND RECOMMENDATION - 8

not become a constitutional violation merely because the victim is a prisoner.") A difference of opinion between the inmate and medical authorities regarding proper treatment does not constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). The delay of or interference with medical treatment for a serious medical need can amount to deliberate indifference. *Jett*, 439 F.3d at 1096; *McGuckin*, 974 F.2d at 1059-60. However, the inmate must show harm resulting from the delay. *Id*.

Plaintiff complains that King County refused to provide him surgery to fix his injured elbow despite the fact that the medical staff confirmed there were bone fragments causing swelling in his elbow, and despite his pain and limitations on his range of motion. (*See* Am. Compl. at 3.) However, Plaintiff's medical records reveal that during his appointments with medical providers concerning his elbow, little swelling was detected, Plaintiff's complaints of pain were relatively minor, and his range of motion was only slightly limited. (*See Sanders Decl.*, Exs. G-K, M.) The conclusions of his two treating physicians were essentially the same; *i.e.*, the injury did not significantly impact Plaintiff's ability to function and treatment could therefore be deferred until Plaintiff was out of custody. (*See id*., Exs. K, M.) Dr. Sanders, who has reviewed Plaintiff's medical records, opines that Plaintiff was treated and evaluated appropriately by JHS medical staff and that his medical treatment was reasonable and within the appropriate standard of care for his medical conditions. (*Id*., ¶¶ 19, 20.)

Plaintiff has presented no evidence demonstrating that his elbow injury was sufficiently serious to warrant surgery, or that he suffered any harm as a result of the refusal of the medical staff to authorize the desired surgery. Plaintiff has, at most, established a disagreement with his

REPORT AND RECOMMENDATION - 9

physicians' decisions regarding the proper treatment of his elbow injury. As noted above, this sort of disagreement is insufficient to establish deliberate indifference.

IV. CONCLUSION

Based on the foregoing, this Court recommends that Defendant's motion for summary judgment (dkt. # 15) be granted, and that Plaintiff's amended complaint (dkt. # 7) and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by **November 20, 2019**. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the day after the objections were due.

DATED this 30th day of October, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10